## DROVERS LIVE STOCK COMMISSION COMPANY, Appellant, v. WILSON COUNTY BANK of Fredonia, Kansas, Respondent..

### Kansas City Court of Appeals, June 2, 1902.

1. Chattel Mortgages: MONEY HAD AND RECEIVED: APPLICATION OF MONEY TO DEBT. Plaintiff sold cattle consigned to it by one E, and as directed had the money transmitted to defendant bank to E's credit. E owed defendant a sum larger than the proceeds of sale, secured by the mortgage on the cattle sold and others, and as directed by E it applied the greater portion of this deposit on said debt. One S, who had a subsequent mortgage on the sold cattle, sued plaintiff and defendant in a Kansas court and recovered judgment against plaintiff, but the judgment was in favor of the defendant therein. Plaintiff paid the judgment and sued defendant in this action to recover the amount so paid. *Held*, defendant had a right, by virtue of its debt and mortgage, to retain said money as against the plaintiff.

2. ———: ———: RENEWAL OF NOTE AND SECURITY: PRIORITY. Renewal of a note secured by a chattel mortgage, and even a new mortgage will not destroy the priority of the original claim in a suit based on the very equity and right of the matter.

3. Pleading: PETITION: DEMURRER. A demurrer admits all allegations of facts to be true, but not the allegations of law.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Grant I. Rosenzweig* for appellant.

(1)    A former judgment is not a bar unless the former case was upon the same cause of action, unless the merits now involved were at issue and actually decided, and unless the present parties were then adverse to each other.   Failure on any one of these things creates no bar.   Williams v. Newcomb, 16 Mo. App. 185; National v. School, 23 Mo. App. 227; Snider v. Bierswirth, 47 Mo. App. 551; Dickey v. Heim, 48 Mo. App. 114; Owens v. Link, 48 Mo. App. 534; Tobener v. Hassinbusch, 56 Mo. App. 591; Bennett v. Southern, 61 Mo. App. 297; Shanklin v. Francis, 67 Mo. App. 457; Glowser v. Noland, 72 Mo. App. 217; Linville v. Rhoades, 73 Mo. App. 217; Sherer v. Akers, 74 Mo. App. 217; Winham v. Kline, 77 Mo. App. 36; Carmody v. Hanick, 85 Mo. App. 659; Warden v. Busbee, 89 Mo. App. 113; City v. Plummer, 89 Mo. App. 515; Offutt v. John, 8 Mo. 120; Bell v. Hoagland, 15 Mo. 360; Ridgley v. Stillwell, 27 Mo. 128; Wright v. Salisbury, 46 Mo. 26; Wells v. Moore, 49 Mo. 229; Spradling v. Conway, 51 Mo. 51; McMahan v. Geiger, 73 Mo. 145; Henry v. Woods, 77 Mo. 282; State Bank v. Bartle, 114 Mo. 276; Nelson v. Barnett, 123 Mo. 564; Wiggin v. St. Louis, 135 Mo. 558; Walser v. Wear, 141 Mo. 443; O'Rourke v. Lindell, 142 Mo. 342; Clark v. Bettelheim, 144 Mo. 258.

*R. E. Ball* and *I. P. Ryland* for respondent.

(1)    Even if facts are stated in the petition which would constitute a cause of action, the judgment of the Kansas court is a bar to further litigation of the matter.    (2)    Even if the Kansas judgment is not a bar, there is no cause of action stated in the petition.    (3) The renewal of a note secured by a deed of trust does not destroy or in any way impair the security, and, in the absense of a special agreement to that effect, the taking of a new security from the same party and on the same property will not merge or extinguish a prior

one of the same quality and degree.    Christian. v. Newberry, 61 Mo. 446; Webb City Lbr. Co. v. Victor Mining Co., 78 Mo. App. 676; Lippold v. Held, 58 Mo. 213.

ELLISON, J.—This is an action for "money had and received." There was a demurrer to plaintiff's petition based on the ground that it did not state facts sufficient to constitute a cause of action, and that the matter complained of was *res adjudicata*, it having been litigated to final judgment in a court of competent jurisdiction in the State of Kansas in a cause wherein John H. Smith was plaintiff and this defendant and this plaintiff were defendants. The trial court sustained the demurrer for both causes and, plaintiff declining to amend, judgment was rendered for defendant.

It appears that plaintiffs are cattle commission men at the stock yards in Kansas City and that defendant is a bank located at Fredonia, in the State of Kansas; that on the sixth of January, 1898, one Ellis, residing in Woodland county, Kansas (a county adjoining that in which Fredonia was located), shipped to Kansas City sixty-five head of cattle and had plaintiff sell them for the price of $1,774.02, together with some other cattle which he owned jointly with another amounting to $485.08. Ellis directed plaintiff to place the said proceeds of sale in a Kansas City bank to the credit of defendant "for the use of said Ellis" which the plaintiff did. In that way the sale money for the cattle came into defendant's hands. It further appears that Ellis had given to said John H. Smith a chattel mortgage on said cattle dated the twenty-third of December, 1896, but not recorded till July 15, 1897, to secure the payment of $1,326, which was unpaid at the time the plaintiff sold the cattle and placed the proceeds as stated. Smith then sued this plaintiff and defendant jointly in Kansas for conversion and re-

covered judgment against plaintiff for the amount of his mortgage claim and interest ($1,558.05), but failed as against this defendant, the Kansas court rendering judgment for the defendant. Plaintiff appealed from ·that judgment to the Supreme Court of Kansas, but failed to prosecute the appeal and the judgment became final. ·

It further appears that prior to Smith's mortgage, Ellis had borrowed $2,000 of defendant and secured the payment thereof by chattel mortgage on more than one hundred head of cattle, including those sold by these plaintiffs. That after the Smith mortgage, but before it was recorded, Ellis made an addition of $1,300 to said loan and at different times after the recording of Smith's mortgage made other additional loans, each time adding the additional sum to that then owing and giving a new mortgage to defendant on the same cattle to secure it. These loans reached an aggregate of more than $4,000. After the cattle were sold and the proceeds placed in the bank as aforesaid, Ellis informed the defendant that these proceeds arose in part from forty head of the cattle in which it had a mortgage amounting to $1,180, and authorized defendant to credit that sum on his indebtedness, which defendant did. Ellis absconded, and the bank in looking after the balance of its claim against him found thirty-nine head of cattle included in its mortgage which had not been shipped to Kansas City, and from the proceeds of these also credited its claim against Ellis. This latter sum and the $1,181 Ellis directed to be credited about equaled its original loan of $2,000, which was secured prior to the Smith mortgage, as above stated, but fell several hundred dollars short of the original loan and the first addition thereto, which addition, as before stated, was made before Smith's mortgage was recorded.

The foregoing we consider the substance of plaintiff's petition, with much of detail necessarily omitted,

since the petition itself covers forty printed pages. It will be observed that Ellis owed the defendant bank much more than it received from plaintiff. That defendant received the proceeds of the cattle sale from plaintiff without knowledge that the cattle were those on which Smith had a mortgage. That when afterwards Ellis informed defendant that forty of the cattle were of those mortgaged to defendant and authorized it to credit their proceeds ($1,181) on his indebtedness, the defendant did so; and thus, we think, properly and legally appropriated that sum to the partial liquidation of its claim. But there was several hundred dollars of the proceeds for which plaintiff sold the cattle and sent to defendant, yet left in defendant's hands, and the question remains whether plaintiff has any right in that as against the defendant.

In determining that question it must be borne in mind that the only ground on which plaintiff can recover—the ground upon which its claim must necessarily be based—is that the money which the defendant bank received from it was the proceeds of cattle on which Smith had the prior claim. And that plaintiff being compelled to pay to Smith, had a right to recover back from the bank. But the facts as disclosed by the petition show that Smith's claim was not prior to the first and second loan made by the bank to Ellis, and these two loans together make more than the sum remitted by plaintiff to the bank. The defendant bank, in point of fact, received money from these plaintiffs which properly belonged to it, by reason of its having the first mortgage lien on the cattle from which the money arose, and it was doubtless such fact which caused the court in Kansas to give judgment for the bank in Smith's suit against it and plaintiff.

It is true that the bank's two loans to Ellis which were ahead of Smith, were afterwards renewed and new mortgages given to secure them, but we do not consider that a renewal in that way destroyed the

priority of the original claim in a suit of this nature which plaintiff alleges is based on the very equity and right of the matter as disclosed by the facts hereinbefore set forth.

While we have stated that plaintiff's claim against the defendant must rest on the hypothesis that the money the bank received from them was Smith's money, we are not unmindful of a singular allegation in plaintiff's petition which they perhaps regard as of controlling importance. It is alleged that the direction of Ellis to plaintiffs to place the proceeds of the sale of the cattle in a Kansas City bank to the credit of the defendant bank, for the use of said Ellis, "meant and was equivalent to a statement and warranty that there was then in existence no adverse mortgage or claim of any kind to said cattle or money or method of transmitting or applying the same. And plaintiff states that such meaning and effect was in like manner ratified and confirmed by said bank by its acceptance of said money on said terms, and the said bank did thereby make and adopt said statements as its own." These are allegations of matters of law. They are mere conclusions of what plaintiff conceives to be the law resulting from certain facts. While, in considering a demurrer, we assume all allegations of fact to be true, it is not so as to allegations of law. We are therefore at liberty to rule that there is no just ground upon which the foregoing statements of law can be founded.

As said at the outset, plaintiff's case in detail involves a long and complicated statement, but it amounts at last to this: That defendant received the money in controversy from its debtor, Ellis, through plaintiff, and that it applied the greater part thereof by direction of Ellis as a credit on his indebtedness. The balance thereof it either applied on such indebtedness or retained it by reason of such indebtedness. This it had a right to do unless there was a prior claim

to the cattle out of which the money arose, and we have already seen there was not.

Plaintiff makes suggestion of the hardship on it in paying the judgment in Smith's favor rendered by the Kansas court and yet denied a recovery in this action. To this it can only be said that defendant's undoubted rights can not be allowed to be subverted on account of a hardship on plaintiff for which defendant is not responsible. If the judgment against plaintiff in Kansas was unjust and ill-advised, they, by their own fault, allowed such judgment to become a finality.

The judgment of the trial court is affirmed. All concur.